## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____
                                                    )
CATALIN LIVIO BUCULEI,                              )
                                                    )
      **Plaintiff**                                  )
                                                    )
      **v.**                                        )     **Civil Action No. 09-40215-DJC**
                                                    )
UNITED STATES OF AMERICA,                           )
                                                    )
      **Defendant.**                                 )
_____ )

### MEMORANDUM OF DECISION

**September 30, 2013**

## I.    INTRODUCTION

Plaintiff Catalin Livio Buculei ("Buculei") brings this action against the Defendant, the United States of America, under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2674 *et. seq*. Buculei is an inmate confined at the Federal Correctional Institution ("FCI") in Fort Dix, New Jersey. Prior to his transfer to Ft. Dix, Buculei was an inmate at the Federal Medical Center in Devens, Massachusetts ("FMC Devens"). Buculei alleges that the staff at FMC Devens failed to provide him with timely, adequate and proper dental care that resulted in significant dental pain and suffering.

The claims now before this Court are the remaining claims contained in Count I of the complaint that arose on or after December 16, 2006, as well as Count II of the complaint. Buculei v. United States, No. 09-cv-40215, 2011 WL 3439192, at *5 (D. Mass. August 4, 2011) ("Buculei I"). Having held a bench trial over the course of four days between November 16, 2012 and December 20, 2012 as to these remaining claims and having received proposed

findings of fact and conclusions of law from the parties, D. 76, 83, 91, 92, the Court now issues its findings of facts and conclusions of law.

## II.    PROCEDURAL HISTORY

Buculei filed his initial complaint in this case *pro se* on December 2, 2009.  D. 1.  On January 20, 2010, the Court (Tauro, J.) granted Buculei's request for *pro bono* counsel, D. 5, 8, 13, and Buculei's counsel filed his notice of appearance on March 2, 2010.  D. 14.  On March 10, 2010, Buculei filed the first amended complaint, which included only the allegations comprising Count I.  D. 15.  Buculei filed a second amended complaint, including the allegations that comprise both Count I and Count II, on May 17, 2010.  D. 20.  The second amended complaint was superseded on May 26, 2010 by the third amended complaint (the "complaint"), which also included Count I (concerning claims of allegedly inadequate dental care by the Defendant in 2006 and 2007) and Count II (concerning claims of allegedly inadequate dental care by the Defendant in and after June 2009) and which remains the operative complaint.  D. 21. After the Defendant moved to dismiss, D. 37, the case was reassigned from Judge Tauro's session to this session, D. 43.

On November 29, 2010, the Defendant moved to dismiss the complaint for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).  D. 37.  On August 4, 2011, this Court granted in part and denied in part the Government's motion, holding that this Court lacked jurisdiction over the portions of Count I that arose on or before December 15, 2006 because those portions were time-barred.  Buculei I, 2011 WL 3439192, at *5.

On June 7, 2012, Defendant moved for summary judgment on the remaining claims before the Court, namely, the part of the FTCA claim in Count I that arose after December 15, 2006 and Count II of the complaint.  D. 57.  The Defendant argued that it was entitled to

summary judgment on the ground that, based upon the undisputed issues of material fact, Buculei could not show that the staff at FMC Devens had been negligent in its dental care and, in particular, he was unable to show that his dental care fell below a reasonable standard of care or that any such allegedly deficient care caused his pain and suffering.   D. 58 at 4-13.   On August 7, 2012, the Court denied the Defendant's motion for summary judgment, concluding that the Defendant had failed to show that there was no genuine issue of material fact as to the remainder of Buculei's claims.   D. 67 at 3; Buculei v. United States, No. 09-cv-40215-DJC, 2012 WL 3263611, at *2 (D. Mass. August 7, 2012) ("Buculei II").   The Court noted that although the parties agreed that Buculei must meet the negligence standard of proof to prevail both on the remainder of Count I and Count II, "Buculei contends . . . that whether FMC-Devens complied with its own policies regarding 'cop-outs' (i.e., in this context, requests by Buculei for medical care), whether it responded to Buculei's multiple cop-outs and did so in timely manner bears upon whether Defendant breached its duty to provide a reasonable standard of care for Buculei's dental treatment."   D. 67 at 3; Buculei II, 2012 WL 3263611, at *2.   The Court agreed with this contention that "[w]hether there was unreasonable delay in responding to Buculei's cop-outs, a point that Defendant does not appear to concede, bears upon whether it provided a reasonable standard of care" and, therefore, the matter should proceed to trial.   D. 67 at 3; Buculei II, 2012 WL 3263611, at *2.

   The matter proceeded to a bench trial on the portion of Count I that occurred after December 15, 2006 and Count II.   The trial began on November 16, 2012 ("Trial Day 1") and continued with testimony on November 26, 2012 ("Trial Day 2") and December 3, 2012 ("Trial Day 3").   After the submission of supplemental proposed findings of fact from counsel, D. 91, 92, the Court heard closing arguments on December 20, 2012 ("Trial Day 4").   At trial,

plaintiff's counsel called Buculei as his sole witness.  D. 84, 86.  The Defendant called Dr. Britt-Still, a dentist formerly employed at FMC Devens, and Dr. Sandra Howard, a doctor and the Clinical Director at FMC Devens since 2001.  D. 90.  Both at the close of Buculei's case and after Defendant rested, the Defendant moved for judgment as a matter of law pursuant to Fed. R. Civ. P. 52(a), (c).  D. 88.  The Defendant sought this ruling on much the same grounds that it had sought summary judgment, compare D. 58 with D. 88, but it also noted that the testimony at trial also revealed that Buculei's commissary purchases included "weekly purchases of dietary items consistent with high acid content, high sugar, and hard foods" which Dr. Britt-Still, a dentist, explained "can aggravate pre-existing dental issues, potentially induce traumatic conditions to the teeth and surrounding tissues, as well as contribute to ongoing poor oral health."  D. 88 at 12. The Court deferred ruling on the motion, but heard closing arguments in the trial and arguments on the motion on Trial Day 4.  D. 90, 94.

## III.    FINDINGS OF FACT

In light of the evidence presented to the Court, the Court makes the following findings of fact:

### A.    The Parties

1.    Prior to his transfer to Ft. Dix, Buculei was an inmate at FMC Devens.  He arrived there in May 2004 and remained at FMC Devens until the end of April 2010.  Buculei Testimony, Trial Day 1.[1]

2.    At trial, Buculei testified regarding his medical and dental treatment at FMC Devens.  Buculei Testimony, Trial Day 1 and Trial Day 2.

---

[1] Final transcripts of the trial are not yet available.  The Court relies upon the evidence presented at trial, the draft transcripts of the trial and the parties' proposed findings of fact and conclusions of law in arriving at its findings and conclusions.

3.     At trial, Dr. Britt-Still and Dr. Howard, the defense witnesses, testified regarding Buculei's medical and dental treatment at FMC Devens.

4.     Dr. Darcel Britt-Still graduated from Temple University School of Dentistry in 1980, and has been practicing as a dentist in good standing for over thirty-two years.  Dr. Britt-Still was the Chief Dental Officer at FMC Devens for two years and served in that capacity at the time that Buculei was transferred from FMC Devens to Ft. Dix.  She treated Buculei on several occasions.  Prior to becoming Chief Dental Officer at FMC Devens, Dr. Britt-Still provided dental care and treatment to inmates at FMC Devens as part of her duties as a temporary duty ("TDY") dentist.  A TDY dentist provides care as a visiting dentist at the request of the institution when additional assistance is required or to provide dental coverage if a dentist is not available at an institution.  Britt-Still Testimony, Trial Day 3.

5.     Dr. Sandra Howard received her medical degree from the New Jersey College of Medicine and Dentistry in 1977.  She is a licensed medical doctor in good standing.  Dr. Howard became the Clinical Director of FMC Devens in 2001 and, at the time of trial, continued to serve in this capacity.  Dr. Howard was the Clinical Director at FMC Devens while Buculei was incarcerated there and during the time periods relevant to the complaint.  At no time during the time that Buculei was incarcerated at FMC Devens did he ask to speak with Dr. Howard, as Clinical Director, about any of his health difficulties.  Howard Testimony, Trial Day 3; Exh. 61.

### B.     Dental Staff at FMC Devens

6.     At all times relevant to Buculei's complaint, Dental Officers were employed at FMC Devens.  Dr. Van Ells was a Dental Officer from 2002 through 2006; Dr. Morazan was a Dental Officer from 2006 until sometime in 2008; Dr. Gelfand was a Dental Officer from

sometime in 2007 or 2008 through July 2009; and Dr. Britt-Still began as the Chief Dental

Officer in August 2009 and served in that capacity at the time that Buculei was transferred from

FMC Devens.  Britt-Still Testimony, Trial Day 3; Howard Testimony, Trial Day 3.  During the

time that Dr. Morazan was on medical leave between March and July 2007, the facility had the

dental hygienist and assistant on staff, along with the medical duty officer and TDY dentists to

cover.  Howard Testimony, Trial Day 3.

　　　　7.　　　　If a dentist was absent from FMC Devens, a visiting dentist was available to see

inmates or inmates were referred out of the institution to a contract dentist or emergency room

in the case of an emergency.  Buculei Testimony, Trial Day 2; Howard Testimony, Trial Day 3.

Buculei agreed that, at times during his incarceration at FMC Devens, he was seen by a visiting

dentist.  Buculei Testimony, Trial Days 1 and 2.  Some coverage would also be provided by the

medical duty officer, a doctor, on staff at FMC Devens.  Howard Testimony, Trial Day 3.

　　　**C.**　　　**Buculei's Initial Dental Examination and Initial Care Upon Arrival at FMC
　　　　　　Devens**

　　　　8.　　　　Upon arrival at FMC Devens, Buculei received a copy of the Admissions and

Orientation handbook that provided, <u>inter alia</u>, that inmates had "the right to dental care as

defined in the Bureau of Prisons' policy to include preventative services, emergency care and

routine care."  Exh. 1 at 12.

　　　　9.　　　　On June 2, 2004, shortly after Buculei's arrival at FMC Devens, Buculei was

screened through an Admission and Orientation ("A&O") dental examination which consisted

of a charting of Buculei's mouth along with an explanation to Buculei about how to access

dental care and services at FMC Devens.  During this orientation, Buculei was instructed about

"cop-out" procedures and how to make appointments with the dental department for an

examination or cleaning.  Buculei was also instructed on sick call protocol and how to submit a

request to be seen by medical or dental staff.   Britt-Still Testimony, Trial Day 3; Howard Testimony, Trial Day 3.

> 1.     The Cop-out Procedure

10.     At FMC Devens, cop-outs are one means by which an inmate may communicate with FMC Devens staff about an issue including medical or dental issues.   Howard Testimony, Trial Day 3.   It is a form of request made by an inmate.   Buculei Testimony, Trial Day 1.[2]

11.     Buculei would deposit his cop-outs in the dental services box at the facility, addressed to the chief dental officer.   Buculei Testimony, Trial Day 1.

12.     The Admissions and Orientation handbook provides, in relevant part:

Inmate Request to a Staff Member (Cop-Out) – Individuals requesting routine dental care (i.e., cleanings, fillings, comprehensive examinations) are to submit a cop-out directly to the Dental Department (Note – all Cop-Outs will be responded to as quickly as possible. If an inmate does not receive a response within a reasonable amount of time, they should contact the Dental Department to check to see if it was received).

Emergencies – Inmates that experience a dental emergency (pain, swelling, infection or trauma) are to sign-up for the next dental sick call.   If an emergency occurs outside of normal working hours, inmates are instructed to notify staff for appropriate evaluation and/or referral.

Exh. 1 at 13.   The handbook does not require that all cop-outs be responded to in writing.   See Exh. 1; D. 92 at 3.

13.     If an inmate submits a cop-out, there is more than one way for the FMC Devens staff to respond.   If a cop-out is received in the medical or dental box, an inmate may be scheduled to be seen for examination or treatment in response.   A cop-out may also be responded to in writing.   Or, an inmate may receive a verbal response to a cop-out.   A cop-out that is blank in the bottom portion of the response section is not returned to a prisoner.   If a copy

---

[2]To be distinguished from a cop-out, a "call-out" is when an inmate is scheduled for a certain activity or medical visit.   Buculei Testimony, Trial Day 1; see Exh. 1 at 3.

of a cop-out exists with no response in writing at the bottom, it is the inmate's copy and it does not mean that the cop-out was not responded to, as the inmate may have been scheduled for an appointment or may have received a verbal response.  Howard Testimony, Trial Day 3.

14.     If a cop-out is responded to verbally, or if an inmate is scheduled for an appointment in response to a cop-out, a written response to the cop-out is not customarily given to an inmate, nor is there a requirement to do so.  Howard Testimony, Trial Day 3.

15.     If an inmate does not receive a response to a cop-out, he may initiate a grievance regarding the lack of a response.  An inmate may also make a verbal, non-written complaint to staff at FMC Devens at mainline.[3]  An inmate also has the option of going through his correctional counselor to obtain a response.  Finally, an inmate may report to sick call for a medical or dental issue.  Howard Testimony, Trial Day 3.

16.     While at FMC Devens, Buculei was aware that he had a right to dental care, such as preventative services, emergency care and routine care.  Buculei Testimony, Trial Day 1; Exh. 1 at 12.  Buculei also knew that he had a responsibility to maintain his own oral hygiene and health.  Buculei Testimony, Trial Day 2.

17.     At the time that Buculei was admitted to FMC Devens, Buculei had ongoing dental issues.  Britt-Still Testimony, Trial Day 3; Howard Testimony, Trial Day 3.

18.     The government objected to the admission of any evidence at trial regarding Buculei's dental treatment at FMC Devens prior to December 15, 2006, given the Court's ruling dismissing the portion of Count I that pre-dates this date.  Given the government's objection, the Court admitted this evidence conditionally and now only recounts and relies upon that portion of

---

[3]Mainline is the term used for the procedure at FMC Devens where staff representative for all departments are present where the inmates are dining and are available to listen to inmate complaints or concerns.  Howard Testimony, Trial Day 3.

the pre-December 15, 2006 treatment that gives background and context for Buculei's later claims and does not rely on this evidence as giving rise to any separate claims for pain and suffering.

19.     On July 19, 2004, Buculei had a dental examination by Dr. Van Ells, which included dental x-rays, and he was evaluated for his complaint of pain on the upper right side of his mouth.  At that time, Buculei could not identify which tooth caused his pain, but dental x-rays revealed decay on Tooth #1 (Buculei's upper right wisdom tooth).  Dr. Van Ells recommended that Tooth #1 be removed, but Buculei refused to have the tooth extracted.  Britt-Still Testimony, Trial Day 3; Buculei Testimony, Trial Day 2; Exh. 59 at 1504, 1510.  Tooth #1 is the same tooth that Buculei testified he began complaining about in 2006.  Buculei Testimony, Trial Day 2; see, e.g., Exh. 5.

20.     On January 25, 2005, Buculei failed to show for his scheduled dental cleaning.  Buculei Testimony, Trial Day 2.  As a result, Buculei was rescheduled for a cleaning on June 1, 2005.  However, when Buculei arrived on June 1st, he declined to have the cleaning.  Thereafter, in 2006, Buculei was seen in the clinic for restoration of a broken filling on another tooth and a dental cleaning was also performed at that time.  Britt-Still Testimony, Trial Day 3; Howard Testimony, Trial Day 3.

21.     On December 1, 2005, Buculei was seen in the dental clinic.  The dental staff recommended the extraction of another tooth, Tooth #13, and again Buculei refused an extraction.  Buculei Testimony, Trial Day 2; Exh. 59 at 1506, 1533.

22.     Buculei testified that he submitted a number of cop-outs in 2006 complaining of tooth pain.  Buculei Testimony, Trial Day 1 and Trial Day 2.  However, Buculei testified that he was aware that if he had an acute or emergency dental need such as pain, swelling or infection,

he was to follow the sick call procedures set forth in the Admission and Orientation handbook. Buculei Testimony, Trial Day 2; Exh. 1 at 13. Those procedures required Buculei to fill out a sick call sign-up sheet for an emergency. Id. Buculei did not submit a sick call sign-up sheet for his dental pain until April 4, 2007. Id.; Exh. 30. After Buculei submitted a sick call sign-up sheet, he was seen for a series of dental appointments. Buculei Testimony, Trial Day 2; Britt-Still Testimony, Trial Day 3.

23.     Buculei was seen in the dental clinic on January 24, 2006 complaining of a broken filling in Tooth #18. Buculei Testimony, Trial Day 2; Britt-Still Testimony, Trial Day 3; Exh. 59 at 1533. A filling was made, but Buculei was advised that if there was any further breakage, there would be a possible extraction. Id.

24.     On March 10, 2006, Buculei was again seen at the dental clinic. He had his teeth cleaned and he was counseled on how to submit a cop-out to request a dental examination. Buculei Testimony, Trial Day 2; Britt-Still Testimony, Trial Day 3; Exh. 59 at 1533.

25.     Through the spring and summer and early fall 2006, Buculei submitted cop-outs to Dr. Van Ells, the dental officer at FMC Devens, for treatment for tooth pain and attended dental open houses seeking appointments to address these issues. Buculei Testimony, Trial Day 1; Exhs. 2-5, 6-8, 9, 10-13. In various of these cop-outs and communications, Buculei complained of severe pain and his difficulty eating or chewing properly as a result. See, e.g., Exh. 5.

        2.     Commissary

26.     During the time period in which Buculei alleges that he was unable to eat and alleges that he was in severe pain due to his dental condition, Buculei's commissary purchases included weekly purchases of dietary items with high acid content, high sugar and/or hard foods

including but not limited to peanuts, chocolate bars with almonds, bagels, roast beef, mints, butter pecan ice cream, pretzels, cheese, salted mixed nuts, donut sticks, chicken drumsticks, soda, cookies and honey.  These commissary items purchased and consumed by Buculei can aggravate pre-existing dental issues (particularly where Dr. Britt-Still testified that the medical records reflected that Buculei did not have "an entirely healthy mouth" when he arrived at FMC Devens), potentially induce traumatic conditions to the teeth and surrounding tissues, as well as contribute to ongoing poor oral health.  Buculei Testimony, Trial Day 2; Britt-Still Testimony, Trial Day 3; Howard Testimony, Trial Day 3; Exh. 60 (Buculei's commissary records from April 27, 2006 through May 31, 2007).

27.     Buculei claimed that the commissary lacked healthy food options and he was not aware of the types of foods he should be eating.  Buculei Testimony, Trial Day 2.  However, during the time that Buculei was at FMC Devens, the commissary provided healthy food choices such as cheese, oatmeal and breakfast drinks that were available for his purchase.   The commissary is also not the only means by which an inmate has access to food since it is designed to supplement the meals are served each day at FMC Devens.  Howard Testimony, Trial Day 3. Furthermore, upon his admission to FMC Devens, Buculei was referred to a nutritionist and enrolled in a healthy diet program to instruct him about healthy eating habits and to assist him in managing his medical issues.  Howard Testimony, Trial Day 3; Exh. 59 at 1291, 1333.

28.     Buculei submitted a copout on October 6, 2006 and he was placed on a waiting list for a dental appointment.  Exh. 59 at 1220; Buculei Testimony, Trial Day 2.  On October 3, 2006, Buculei was seen by dental staff, namely Dr. Morazan, not the prior dental officer, Dr. Van Ells, for a cleaning which was not what Buculei had been seeking.  Buculei Testimony, Trial Day 1; Exh. 14 (seeking to address pain in teeth #1 and #27).

29.     Buculei later submitted another cop-out, on October 6, 2006, in which he noted that "the Dr. indicated that I have several tooth conditions that I need to have an x-ray asap." Buculei Testimony, Trial Day 2; Exh. 59 at 1220.  He received a written response indicating that he was placed on the dental waiting list for an appointment.  Buculei Testimony, Trial Day 2; Exh. 59 at 1220.

30.     In 2006, during the time that Buculei testified that he was unable to sleep due to the pain from his teeth, Buculei was seen in the FMC Devens sleep disorders clinic and was diagnosed with very severe sleep apnea with findings of very poor sleep quality.  Buculei Testimony, Trial Day 2; Exh. 59 at 1282-1284.  On November 16, 2006, Buculei spoke with the respiratory specialist at FMC Devens  and explained that it was very difficult, if not impossible, to use the C-pap machine, a breathing device to assist him with his sleep apnea because of his dental pain.  The specialist advised him to contact dental services.  Buculei Testimony, Trial Day 1.

31.     He submitted several cop-outs in November 2006 and December 2006 complaining of severe tooth pain in teeth #1 and #27 and seeking a dental appointment.  Buculei Testimony, Trial Day 1; Exhs. 16-21.

32.     During this same period of time, Buculei was purchasing and consuming commissary items that included cheesecake, pretzels, ice cream, candy bars with nuts, and honey roasted peanuts.  Buculei Testimony, Trial Day 2; Exh. 60 (dated 12/5/06, 12/12/06, 12/19/06).

**D.      Findings Relating to Buculei's Dental Care After December 15, 2006 (Count I)**

33.     On January 15, 2007, Buculei submitted a cop-out stating that he was unable to eat, sleep or drink because of tooth pain.  Buculei Testimony, Trial Day 1 and Trial Day 2; Exh. 22.  During this time, Buculei was purchasing and consuming from commissary candy bars,

honey roasted peanuts, ice cream, bagels, peanut butter cups and pork rinds.  Buculei Testimony, Trial Day 2; Exh. 60 (dates 1/3/07, 1/8/07, 1/16/07).

34.     Either as a result of the January 15th cop-out or another request, on January 23, 2007, Buculei was seen for emergency dental care by Dr. Morazan.  Buculei Testimony, Trial Day 2; Exh. 59 at 1532.  At that time, Buculei was complaining of pain in Tooth #1.  Tooth #1 was extracted that same day by Dr. Morazan.  Buculei Testimony, Trial Day 1; Exh. 59 at 1532, 1539, but the dentist did not deal with tooth #27 about which Buculei had also been complaining since the dentist indicated that he would deal with one dental problem at a time.  Buculei Testimony, Trial Day 1; Exh. 23.

35.     Later that same day, January 23, 2007, he submitted a cop-out regarding pain in tooth #27 and requesting an appointment to address that issue.  Exh. 23.

36.     In February of 2007, Buculei submitted several cop-outs complaining of tooth pain in tooth #27.  Exh. 24-25.  During this same period of time, Buculei was purchasing and consuming from commissary candy bars with almonds, honey roasted peanuts, bagels, ice cream, yogurt raisin nut mix, salted mixed nuts, pickles, pretzels and Fruit Loops cereal.  Buculei Testimony, Trial Day 2; Exh. 60 (dates 1/29/07, 2/5/07, 2/12/07, 2/20/07, 2/26/07).  By February 26, 2007 as a result of at least one cop-out, Buculei received a call-out and an x-ray of Buculei's tooth #27 was also taken that day.  Buculei Testimony, Trial Day 1; Exh. 26.

37.     In March 2007, Buculei submitted cop-outs complaining of pain and sensitivity relating to an abscess that had developed in tooth #27.  Exh. 26-28.  Buculei had a dental appointment schedule for March 29, 2007, but the appointment was cancelled.  Id.

38.     In or about late March 2007 or early April 2007, Buculei submitted an administrative complaint about his requests to see the dentist regarding his tooth pain.  Exh. 29.

He reported, among other things, that he had an extraction in January 2007, but had been waiting since February 2007 to be treated for other "excruciating toothaches" and that he "cannot eat, drink or sleep."  Id.  The response of the correctional counselor was that Dr. Morazan was out on medical leave and that all inmates requiring immediate attention need to see a nurse for further medical assessment.  Id.

39.     On April 4, 2007, Buculei submitted a sick call signup sheet regarding his tooth pain and noting that he could not eat, drink or sleep properly.  Exh. 30.

40.     On April 8, 2007, Buculei was seen in a medical sick call by Ms. Spada complaining of increased pain to his right lower tooth and a possible tooth abscess.  Buculei Testimony, Trial Day 2; Exh. 59 at 1626.  After he was evaluated, Buculei was provided with an intra-muscular injection, oral antibiotics and pain medication.  Britt-Still Testimony, Trial Day 3; Exh. 59 at 1626-1627.  Buculei received these medications either that evening or the next day. Buculei Testimony, Trial Day 1.  A consult was also written to dental for follow up for the next day.  Buculei Testimony, Trial Day 1; Britt-Still Testimony, Trial Day 3.

41.     The records reflect that Buculei was seen for a dental examination on April 10, 2007.  Britt-Still Testimony, Trial Day 3; Exh. 59 at 1530.   X-rays of Buculei's Tooth #28 and Tooth #29 were taken and Buculei was put on the waiting list to be seen for a visiting dentist. Buculei Testimony, Trial Day 1; Britt-Still Testimony, Trial Day 3; Exh. 33; Exh. 59 at 1531.

42.     The following day, April 11, 2007, Buculei went to health services for tooth pain and was examined by Ms. Spada who also conferred with the doctor.  Buculei Testimony, Trial Day 1 and Trial Day 2; Exh. 59 at 1624.  Buculei indicated that the pain and swelling had not improved.   He received an intramuscular shot, antibiotics and an outside oral surgeon was consulted.   Britt-Still Testimony, Trial Day 3; Exh. 59 at 1624.   Buculei was sent to the

14

University of Massachusetts ("UMass") Emergency Room that day and Dr. Zyurzynski performed oral surgery and drained a large amount of accumulated puss at and around tooth #27. Id.; Exh. 35.

43.    In his medical notes, Dr. Zyurzynski instructed Buculei to "[s]ee dentist as soon as possible.  You need dental work that cannot be done at ER extraction/root canal . . . ."  Exh. 37.

44.    Upon return to FMC Devens, Buculei was seen by medical staff and he denied any discomfort.  Buculei Testimony, Trial Day 2; Britt-Still Testimony, Trial Day 3; Exh. 59 at 1622.  Additionally, that same day, the pharmacist at FMC Devens processed Buculei's prescriptions from UMass and Buculei received antibiotics.  Buculei Testimony, Trial Day 1; Britt-Still Testimony, Trial Day 3; Exh. 59 at 1625.

45.    On April 13, 2007, Dr. Beam prescribed an antibiotic and Tylenol III for Buculei, pursuant to the UMass consult the previous day.  The pharmacist processed those orders later that day.  Buculei Testimony, Trial Day 2; Britt-Still Testimony, Trial Day 3; Exh. 59 at 1622.

46.    On April 13, 2007, medical staff officer Dr. Bernhard, Buculei's primary care physician, saw Buculei in health services for a chronic care visit.  Dr. Bernhard was informed of Buculei's prior emergency room visit and abscess drainage at UMass and he advised that Buculei to followup with the dental staff.  Buculei Testimony, Trial Day 1 and Trial Day 2; Britt-Still Testimony, Trial Day 3; Exh. 59 at 1621.

47.    On April 20, 2007, Buculei was seen in health services by Ms. Spada.  At that time, Buculei's abscess was improving and resolving.  Buculei Testimony, Trial Day 2; Britt-Still Testimony, Trial Day 3; Howard Testimony, Trial Day 3; Exh. 59 at 1619.

48.     On May 21, 2007, FMC Devens issued a response to Buculei's earlier request for administrative remedy, seeking to be seen by a dentist as soon as possible.  Exh. 40.  The response recited the medical care given on April 11, 2007 and Buculei's allegations about toothaches since the summer 2006.  Id.   The response granted the request for administrative remedy and noted that he had been placed on the call-out list to see a dentist on May 21, 2007. Id.

49.     Buculei was seen on May 21, 2007 by Dr. Gelfand for dental care.  Buculei Testimony, Trial Day 1 and Trial Day 2; Britt-Still Testimony, Trial Day 3; Exh. 59 at 1529.  At that time, Buculei's chief complaint was a broken filling in Tooth #27.  Id.  An extraction of Tooth #27 was performed that day.  Buculei Testimony, Trial Day 2; Britt-Still Testimony, Trial Day 3; Exh. 59 at 1529, 1537.

50.     On May 25, 2007, Buculei was seen by Dr. Gelfand at a dental open house for a complaint of post operative pain.  Buculei Testimony, Trial Day 2; Britt-Still Testimony, Trial Day 3; Exh. 59 at 1528.  Dr. Gelfand looked at the extraction site of Tooth #27, noted swelling in the area, recommended warm water salt rinses and also provided Buculei with a prescription for antibiotics.  The pharmacist reviewed and processed the orders that day, Buculei Testimony, Trial Day 2; Britt-Still Testimony, Trial Day 3; Exh. 59 at 1528, and Buculei received them a few days later.  Buculei Testimony, Trial Day 1.  Swelling and pain at a post-operative site is normal.  Britt-Still Testimony, Trial Day 3.

51.     When Buculei was seen in the chronic care clinic on June 25, 2007, he stated that he had no complaints at that time.  Buculei Testimony, Trial Day 2; Britt-Still Testimony, Trial Day 3; Howard Testimony, Trial Day 3; Exh. 59 at 1615.

52.     On July 12, 2007, Buculei was seen in the dental clinic by Dr. Gelfand for an emergency dental examination.  Buculei Testimony, Trial Day 2; Britt-Still Testimony, Trial Day 3; Exh. 59 at 1527.  At that time, Buculei indicated that a prior filling fell out on Tooth #16 (upper left wisdom tooth).  That same day, decay was removed from the tooth and a filling was placed. Britt-Still Testimony, Trial Day 3.

**E.     Findings Related to Buculei's Dental Care Between June 2009 and August 2009[4] (Count II)**

53.     Buculei submitted a June 30, 2009 cop-out complaining of tooth pain in Tooth #18, Tooth #20, Tooth #21.  This complaint involved pain in teeth that was different from previous complaints in 2006 and 2007.  Buculei Testimony, Trial Day 2; Britt-Still Testimony, Trial Day 3.  Buculei received a written response to the cop-out indicating that he was placed on the waiting list for a dental appointment.  Buculei Testimony, Trial Day 2; Britt-Still Testimony, Trial Day 3; Exh. 42; Exh. 59 at 1705.  At the time he submitted his cop-out, Buculei indicated that he had been in pain for three days.  Exh. 42.

54.     On June 26, 2009, Buculei was scheduled for a follow-up visit in health services. Buculei failed to show for his appointment.  Britt-Still Testimony, Trial Day 3; Exh. 59 at 1800.

55.     Buculei submitted a June 30, 2009 inmate sick call sign up sheet to which the staff responded that he had a scheduled dental appointment and should watch out for the call-out list for this appointment.   Exh. 43.

56.     On July 2, 2009, Buculei was seen in health services for a complaint of tooth pain. Buculei told the nurse that he was taking Motrin with no relief.  The Medical Duty Office ("MDO") was notified and Buculei was prescribed Percocet for three days, with an instruction to

---

[4]At trial, the parties stipulated that Buculei's claim under Count II ended at the end of August 2009.  Trial Day 2; D. 92 at n. 3; Exh. 51.

follow up with medical staff on July 6, 2009.   Buculei Testimony, Trial Day 2; Britt-Still Testimony, Trial Day 3; Exh. 59 at 1799.

57.     On July 3, 2009, Buculei was seen at sick call in health services for a complaint of lower jaw pain.  Buculei was instructed to follow up with another sick call if necessary.  Buculei Testimony, Trial Day 2; Britt-Still Testimony, Trial Day 3; Exh. 59 at 1798.

58.     On July 4, 2009, Buculei was seen in health services complaining of increasing pain in his lower left molar and throat.  Buculei indicated that the pain began one to two weeks prior, and that hot food and sweet food made the pain worse.  However, Buculei indicated that Percocet was providing him with relief.  An antibiotic was prescribed and Buculei was instructed to follow up with a sick call if needed.  Buculei Testimony, Trial Day 2; Britt-Still Testimony, Trial Day 3; Exh. 59 at 1796.

59.     During the time that Buculei was complaining that sweet food and hot food made his pain worse, Buculei was purchasing and consuming commissary coffee, candy bars with almonds, honey wheat pretzels, crispy candy bars, mixed nuts, nacho chips and butter pecan ice cream.  Exh. 60 (dates 7/1/09, 7/8/09).

60.     On July 6, 2009, Buculei was seen for a sick call in the dental clinic for pain in Tooth #18 as a result of his earlier cop-out.  Buculei Testimony, Trial Day 1.  An x-ray was taken, which Dr. Beam reviewed.  Buculei Testimony, Trial Day 2; Britt-Still Testimony, Trial Day 3; Exh. 59 at 1659.

61.     On July 6, 2009, Buculei was also seen for a sick call in health services for a complaint of pain in Tooth #18.  Buculei said his pain had decreased since taking an antibiotic and he requested a renewal of pain medicine.  Another prescription of Percocet was ordered.  At the time of this sick call, Buculei indicated his pain was 3 out of 10 and the pain had decreased

since taking the antibiotics.  Staff noted "[s]ignificant improvement with dental pain thus far" and "continue to follow" in Buculei's medical records.  Buculei Testimony, Trial Day 2; Britt-Still Testimony, Trial Day 3; Exh. 59 at 1794-1796.

62.     Buculei submitted a cop-out and a sick call signup sheet on July 21, 2009 complaining that he had not yet seen a dentist, had run out of pain medication and antibiotics and that, as of July 17, 2009, "the pain is back in said area in said tooth and intensifying day by day." Exhs. 44-45.

63.     As a result, on July 23, 2009, Buculei was seen in health services for followup and a complaint of increased pain in his lower left molar.  X-rays were taken and they showed no signs of an abscess.  Buculei was scheduled to be seen by a dentist within a week.  Buculei's pain medication (Percocet) was also renewed.  Buculei Testimony, Trial Day 2; Britt-Still Testimony, Trial Day 3; Exh. 59 at 1792.

64.     On July 25, 2009, Buculei was seen in health services for followup for his tooth pain and for a review of medications, which were due to soon expire.  At that time, Buculei said his tooth pain had "recently increased."  Buculei was informed that he was on the list to be seen by a dentist during the upcoming week.  Buculei Testimony, Trial Day 2; Britt-Still Testimony, Trial Day 3; Exh. 59 at 1790.

65.     That same day, Buculei, through correctional staff, approached medical staff, complaining of tooth pain and seeking pain medication and antibiotics.  Buculei did not recall being seen by any medical staff that night, Buculei Testimony, Trial Day 2, but Buculei was given the option of being seen two days later, but Buculei declined, stating that he had already been seen on July 23, 2009.  Buculei Testimony, Trial Day 2; Britt-Still Testimony, Trial Day 3; Exh. 59 at 1789.

66.     The next day, July 26, 2009, Buculei was seen in the health services clinic. Buculei was informed that he would be seen by a dentist that week.  Although Buculei testified that he did not receive any medications, he was prescribed Amoxicillin and Metronidazole (antibiotics) for seven days.  Although Buculei testified that he was in pain, Buculei did not seek a renewal of his pain medication (Percocet) at this visit.  Buculei Testimony, Trial Day 2; Britt-Still Testimony, Trial Day 3; Exh. 59 at 1787-1788.

67.     On July 28, 2009, Buculei was seen by a visiting dentist, who prescribed a rinsing (saline) solution for Buculei. Buculei Testimony, Trial Day 2; Britt-Still Testimony, Trial Day 3; Exh. 48, but Buculei was still requesting to be seen regarding a severe abscess. Exh. 48; see Exh. 57, 58.

68.     On August 3, 2009, Buculei submitted an administrative complaint explaining that he had been experiencing acute pain since June 27, 2009 in teeth #18, 20 and 21 and requesting "to see a dentist as soon as possible, I have been living with excruciating pain for a month." Exh. 47.  The correctional counselor's response was that he would be scheduled to see the Chief Dental Officer on or about August 10, 2009.  Exh. 47; Exh. 59 at 1711; Buculei Testimony, Trial Day 1.

69.     On August 6, 2009, Buculei submitted another cop-out and also another sick call signup sheet regarding tooth pain relating to the abscess at tooth #18.  Exh. 48.

70.     The same day, August 6, 2009, Buculei was seen for a sick call visit by Dr. Britt-Still for a complaint of a toothache (tooth #18).  Buculei was out of medication at that time.  Dr. Britt-Still wrote another prescription for Amoxicillin and Buculei was informed that he would be placed on a future call-out for an appointment.  Buculei Testimony, Trial Day 2; Britt-Still Testimony, Trial Day 3; Exh. 59 at 1660.

71.     The next day, August 7, 2009, Dr. Britt-Still saw Buculei for a sick call in the dental clinic for a complaint regarding his abscess and a concern that the medications he was prescribed were not working relative to Tooth #18.   At that time, Buculei's medications were changed and the dentist discussed the possibility of either removal of the tooth or nerve treatment with him.   Buculei was placed on the list for a future call-out.   Buculei Testimony, Trial Day 2; Britt-Still Testimony, Trial Day 3; Exh. 50; Exh. 59 at 1662.

72.     When Buculei was seen by Dr. Britt-Still on August 16, 2009, he continued to refuse an extraction of Tooth #18.   Due to Buculei's resistance to an extraction, Dr. Britt-Still performed a pulpectomy.   Dr. Britt Still informed Buculei that the canals in this tooth were tiny, that she was not able to negotiate the canals and that a root canal would not likely be successful if attempted.   Dr. Britt Still prescribed an antibiotic and a pain medication (Naproxen) for ten days as an alternative to Ibuprofen.   Buculei Testimony, Trial Day 2; Britt-Still Testimony, Trial Day 3; Exh. 59 at 1654, 1664, 1665, 1713.

## IV.   CONCLUSIONS OF LAW

In light of the evidence presented to the Court, the Court makes the following conclusions of law:

### A.     The Federal Tort Claims Act and Buculei's Claims

1.     In the complaint, Buculei alleged that FMC Devens failed to provide him with timely, adequate and proper dental care that resulted in pain and suffering.   D. 21

2.     In his opposition to the government's motion for judgment of a matter of law, Buculei reiterated that the claims in the complaint are "not dental malpractice but rather that although he followed the procedures the government set for him to receive treatment for his

dental problems the defendant repeatedly failed to provide him access to dental health care." D. 89 at 1.

3.      Pursuant to the Federal Tort Claims Act, "the United States [may be liable for] … injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee … while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1).

4.      To prevail on his claims under the law of Massachusetts, as both parties acknowledge, D. 89 at 12, Buculei must prove that there was (1) a legal duty owed by the Defendant to Buculei; (2) a breach of that duty; (3) proximate or legal cause; and (4) actual damage or injury. Frappier v. Countrywide Home Loans, Inc., 645 F.3d 51, 58 (1st Cir. 2011); Heinrich v. Sweet, 308 F.3d 48, 62-63 (1st Cir. 2002).

**B.      Buculei Failed to Meet His Burden to Show Breach of Duty Or Causation**

5.      The record demonstrates that Buculei received adequate dental care and was prescribed adequate pain medications and antibiotics for his chronic and acute dental conditions. Buculei was seen by dental and medical professionals during the relevant portion of his time at FMC Devens and he was treated not only for repeated dental matters, but also for various medical issues as well. Buculei did not exhibit, nor has he alleged, any of the symptoms or complications that would be associated with a life threatening dental condition.

6.      Buculei disputes the Defendant's characterization of the timing and type of care that he received. Buculei, however, cannot deny that he did, in fact, receive treatment for his dental conditions. Buculei cannot state a claim for negligence simply because he was not able to

direct the type or level of treatment that he received while he was incarcerated.  See Jackson v. Fair, 846 F.2d 811, 817 (1st Cir. 1988) (applying the same principle in the constitutional context where a prisoner had alleged that the DOC had violated the 8th Amendment by transferring him for a psychiatric hospital to a correctional institution).

7.      Buculei's complaints regarding the care that he received and the timing of that care fails because the record, as a whole, does not demonstrate that Buculei's dental care "'did not conform to good dental practice' and that damage resulted therefrom."  Kilburn v. Dept. of Correction, 72 Mass. App. Ct. 1105, 2008 WL 2566382, at *3 (2008) (unpublished decision) (affirming dismissal of negligence claims of a DOC inmate against a prison dentist) (citing Anderson v. Attar, 65 Mass. App. Ct. 910, 911 (2006)).

8.      "[The Bureau of Prisons] is by no means required to tailor a perfect plan for every inmate; while it is constitutionally obligated to provide medical services to inmates, Estelle v. Gamble, 429 U.S. 97, 103-05 (1976), these services need only be on 'a level reasonably commensurate with modern medical science and of a quality acceptable within prudent professional standards.'  United States v. DeCologero, 821 F.2d 39, 42 (1st Cir. 1987)."  United States v. Derbes, 369 F.3d 579, 583 (1st Cir. 2004).

9.      Buculei also did not offer an expert to opine that the dental care he received fell below the minimum standard of care.  Primus v. Galgano, 329 F.3d 236, 241 (1st Cir. 2003) (requiring plaintiffs to present expert testimony as to standard of care and its breach in medical malpractice action "unless the breach is sufficiently obvious as to lie within the common knowledge of the jury") (citing Heinrich, 308 F.3d at 63); see Swan v. United States, 698 F. Supp. 2d 227, 231 (D. Mass. 2010).  Although Buculei has argued that no such expert opinion was necessary to prevail upon his negligence claims where the alleged lack of responsiveness to

Buculei's complaints of pain showed lack of reasonable care, the absence of same at trial in this case contributed to his failure to prove that any delay in responding to cop-outs caused or aggravated his dental issues, particularly when there was evidence in the record that he refused certain dental advice (regarding extractions and cleanings at certain points) and there was expert testimony from the defense that his contemporaneous consumption of certain foods could have contributed to his tooth pain, discomfort and aggravated resolution of dental issues (even where, as to certain of the commissary purchases, like the nuts, Buculei claimed that he ground them into a paste to eat).  Therefore, the absence of such expert opinion here contributed to Buculei's failure to show a breach of the duty of care by the Defendant, but also causation.

10.     Failing to show causation is particularly evident here, where, as the record above reflects, Buculei did in fact receive dental care at FMC Devens and was seen and treated by dental staff, medical staff, nursing staff and physician assistants about these issues and he was prescribed pain medications and antibiotics to treat his dental condition.

11.     In addition to the medical and dental care that Buculei received, during the time period in which Buculei alleges that he was unable to eat and was in severe pain due to his dental situation, Buculei's commissary purchases reveal that Buculei made weekly purchases of dietary items consistent with high acid content, high sugar and/or hard foods.  These commissary items purchased by Buculei could aggravate pre-existing dental issues, potentially induce traumatic conditions to the teeth and surrounding tissues, as well as contribute to ongoing poor oral health. It is not "blam[ing] the victim," as Buculei suggests, D. 92 at 3, to rely, in part on the course of Buculei's commissary purchases in determining whether the Defendant's alleged negligence caused Buculei's pain and suffering here.  Moreover, such purchases go to the credibility of Buculei's complaints of pain in certain instances when he persisted in making such purchases

when other food options were available and where the defense witnesses testified that such continuing dental issues could have contributed to or been aggravated by such dietary choices.

12.     Moreover, Buculei's allegations about the alleged lack of responsiveness to his requests (mostly in the form of cop-outs) do not save Buculei's claims.  The lack of a written response to a cop-out does not indicate lack of care by FMC Devens.  There is no institutional requirement that such request be responded to in writing, see Exh. 1, and, therefore, the failure of the staff to do so in a number of instances does not reflect a violation of its own policies.  Cf. Sullivan v. Commissioner of Correction, 69 Mass. App. Ct. 1115, 2007 WL 2296547, at *6 (2007) (vacating trial court's entry of summary judgment for Commissioner where, inter alia, DOC protocols provided for yearly teeth cleanings, but the record showed that the inmate had not received a dental cleaning between 1997 and 2005).

13.     Dr. Howard, the Clinical Director at FMC Devens during Buculei's time there, testified that such requests could be responded to in various ways and not just in writing. Accordingly, it is appropriate to read the history of such cop-outs during the time period alleged in (the remainder of) Count I and Count II in light of Buculei's dental treatment at FMC Devens. This record reflects that Buculei did receive dental treatment, treatment with pain medication and antibiotics, oral procedures and/or surgery provided at the facility (or facilitated at an off-site facility, i.e., emergency room).  As one example of the lack of responsiveness (or delay in responsiveness) by FMC Devens, Buculei points to the recommendation of the UMass oral surgeon who advised that he should see a dentist as soon as possible after his April 11, 2007 surgery for abscess and that he did not see a dentist at FMC Devens until May 21, 2007.  This timeline, however, ignores the intervening medical treatment that Buculei received as soon as he returned to FMC Devens from the hospital and Dr. Howard's testimony about the need for

medical issues like the abscess to be resolved before such additional dental treatment was advisable.  In light of this evidence (and in the absence of medical opinion to the contrary), the Court cannot conclude that the facility's handling of Buculei's cop-outs, in light of his actual medical and dental care, constituted a breach of the duty of reasonable care.

## V.      <u>CONCLUSION</u>

After consideration of the evidence presented at trial and in light of the aforementioned findings of fact and conclusions of law, this Court finds that judgment will enter in favor of the Defendant.  In light of this ruling, the Court DENIES the Defendant's motion for judgment as a matter of law, D. 88, as moot.

**So ordered.**

                                              /s/ Denise J.  Casper
                                              United States District Judge